**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                             :

In Re Commonwealth of Pennsylvania's    :
Application for Extraordinary Jurisdiction  :

                                             :     Civ No. 2:13-cv-03038-BMS

In                                               :
Commonwealth of Pennsylvania       :

                                             :
                     v.                         :

                                             :
Christopher Williams                 :
(No. 88 EM 2013)                   :
_____  :

## DEFENDER ASSOCIATION OF PHILADELPHIA'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

David Richman (PA 04179)          Patrick J. Carome (pro hac vice)
PEPPER HAMILTON LLP            Paul R.Q. Wolfson (pro hac vice)
3000 Two Logan Square            Joshua M. Salzman (pro hac vice)
18th & Arch Streets                 WILMER CUTLER PICKERING
Philadelphia, PA 19103            HALE AND DORR LLP
                                     1875 Pennsylvania Avenue, NW
                                     Washington, DC 20006

*Attorneys for Respondent Defender Association of Philadelphia*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................1

    I.     The FCDO's Motion To Dismiss Should Be Granted...............................1

          A.     The Commonwealth Misunderstands The Rationale For The
                   Limitations On Private Rights Of Action ......................................3

          B.     Any State Law That Would Authorize Enforcement Of Section 3599
                   Against The FCDO Here Is Preempted ........................................5

               1.     The Commonwealth Applies The Wrong Legal Framework ..........5

               2.     There Is A Clear Conflict Between The Commonwealth's
                      Attempt To Regulate The FCDO's Use Of Grant Funds And
                      The AO's Exclusive Authority To Supervise The FCDO...............9

               3.     Preemption Does Not Intrude On The Inherent Authority Of
                      Pennsylvania Courts ...................................................13

    II.    Alternatively, The Court Should Stay This Action So That The AO May Act.....17

CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arizona v. United States*,
132 S. Ct. 2492 (2012) ................................................................. 12

*Astra U.S.A., Inc. v. Santa Clara County*,
131 S. Ct. 1342 (2011) .................................................................. 5

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001) ............................................................... passim

*Commonwealth v. Harris*,
No. 2:13-mc-00062-CMR (E.D. Pa.) ......................................... 14

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ..................................................................... 12

*Death Row Prisoners of Pennsylvania v. Ridge*,
948 F. Supp. 1278 (E.D. Pa. 1996).............................................. 8

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010) ........................................................... 7

*Garner v. Teamsters*,
346 U.S. 485 (1953) ..................................................................... 12

*Geier v. Honda Motor Co.*,
529 U.S. 861 (2000) ....................................................................... 7

*Gonzaga v. Doe*,
536 U.S. 273 (2002) ....................................................................... 3

*Haagensen v. Supreme Court of Pennsylvania*,
390 F. App'x 94 (3d Cir. 2010)..................................................... 16

*Harbison v. Bell*,
556 U.S. 180 (2009) ....................................................................... 8

*In re Loney*,
134 U.S. 372 (1890) ...................................................................... 16

*Kimmel Inc. v. DowElanco*,
275 F.3d 1199 (9th Cir. 2002)................................................... 7, 11

*Merrell Dow v. Thompson*,
    478 U.S. 804 (1986) ................................................................................................6

*Mitchell v. Wetzel*,
    No. 2:11-cv-02063-MAM (E.D. Pa.) ...............................................................6, 11

*NASDAQ OMX PHLX, Inc. v. PennMont Securities*,
    52 A.3d 296 (Pa. Super. 2012) ...............................................................................4

*Office of Disciplinary Counsel v. Anonymous Attorney A*,
    552 Pa. 223, 714 A.2d 402 (1998)........................................................................15

*Simonca v. Mukasey*,
    No. Civ. S-08-1453, 2008 WL 5113757 (E.D. Cal. Nov. 25, 2008)....................14

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ................................................................................................4

*Walter v. Beard*,
    No. 09-2465, 2010 WL 936466 (M.D. Pa. Mar. 15, 2010) .....................................8

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ..................................................................................6

*Wisconsin Dep't of Industry, Labor and Human Relations v. Gould Inc.*,
    475 U.S. 282 (1986) ..............................................................................................12

**FEDERAL STATUTES**

18 U.S.C. § 3006A(g)....................................................................................................9

18 U.S.C. § 3006A(g)(2)(B)........................................................................................18

18 U.S.C. § 3006A(h)..................................................................................................18

18 U.S.C. § 3006A(i)..............................................................................................9, 18

42 U.S.C. 1983 ...............................................................................................................3

**OTHER AUTHORITIES**

Hart & Wechsler's *The Federal Courts and the Federal System* (6th ed. 2008) ...........4

Pennsylvania Rule of Professional Conduct 8.4.........................................................15

*State Incorporation of Federal Law: A Response to the Demise of Implied Federal Rights
    of Action*, 946 Yale L.J. 1144 (April 1985) .............................................................6

## INTRODUCTION

The Defender Association of Philadelphia (FCDO) respectfully submits the following reply to the Commonwealth's opposition to the FCDO's motion to dismiss these proceedings with prejudice (Dkt. No. 16).  As explained below, because the Commonwealth has no right under federal law to enforce Section 3599 and because any state law that would convey such a right conflicts with and is preempted by federal law, this proceeding should be dismissed with prejudice.

## ARGUMENT

### I.    The FCDO's Motion To Dismiss Should Be Granted

The FCDO's motion to dismiss (Dkt. No. 14) argued that, as a matter of federal law, only the Administrative Office of the United States Courts (AO) may enforce the terms of the annual sustaining grant that the FCDO receives from the AO, and any state law to the contrary is preempted.  In response, the Commonwealth never disputes that Congress did not intend for the Commonwealth or its courts to oversee the FCDO's use of its federal grant funds.  Indeed, the Commonwealth has explicitly conceded that federal law does not provide it with a right of action.  Comm. Remand Br. [Dkt. No. 15] at 3 (conceding that "the parties are in agreement that the statute in question [Section 3599] creates no federal private right of action").

Instead, the Commonwealth argues that *state* law provides the authority for enforcement of Section 3599 against the FCDO here, either because some unspecified state law that incorporates federal law extends such enforcement authority (MTD Opp. 5-10), or because state courts may enforce Section 3599 in the name of "governing the practice of law" rather than "enforcing the statute" as an end in itself (MTD Opp. 11).[1]  But Congress assigned responsibility

---

[1]     The Commonwealth also argues that the Court need not reach the FCDO's motion to dismiss because the Court should instead grant the Commonwealth's motion to remand these

for enforcing conditions in the FCDO's federal grants to the AO, not to the Commonwealth or its courts, and the Commonwealth cannot subvert that congressional design merely by recasting the proceeding as arising under state rather than federal law.

Congress has the power to design a federal program in a way that centralizes enforcement authority in a single regulator to ensure consistent application of the law in a national program. Congress can also utilize a single designated regulator to ensure that the law is enforced and remedies are tailored so as to best achieve Congress's objectives.  Yet here, the Commonwealth argues that Pennsylvania law can upend Congress's carefully considered delegation of exclusive supervisory authority to the AO, by also empowering the Commonwealth to enforce the terms of the FCDO's grants.  Moreover, in the Commonwealth's view, it may enforce the terms of federal grants without regard for whether the AO agrees with the Commonwealth's interpretation of those terms, and Pennsylvania courts may find that the FCDO has violated its federal grant conditions even if the AO disagrees.  MTD Opp. 15-16.  And the Commonwealth asserts that the FCDO can be disqualified from state court based on a finding of such a violation, even if the AO would impose a different remedy for any violation and would conclude that disqualification would be contrary to the objectives of the CJA.  MTD Opp. 16-17.

The Commonwealth is wrong.  The Supremacy Clause protects federal programs from disruptive intrusions of this kind and preempts any state law that would authorize the Commonwealth or its courts to interfere with federal regulatory authority, even on a basis nominally rooted in state law.

---

proceedings to state court.  MTD Opp. 4.  The FCDO will oppose the Commonwealth's remand motion in due course.  (Dkt. Nos. 18, 20).

### A. The Commonwealth Misunderstands The Rationale For The Limitations On Private Rights Of Action

Before delving into the preemption analysis itself, it is important to establish the reasons why Congress—and Congress alone—has the power as a matter of federal law to determine who is authorized to enforce a federal statute. The Commonwealth is badly mistaken on this point, and that error infects its entire preemption analysis.

The Commonwealth describes the private-right-of-action doctrine as grounded substantially in federalism principles that supposedly restrict Congress's authority to require state courts to hear private actions to enforce federal law. MTD Opp. 5-10. Proceeding from that premise, the Commonwealth concludes that the "concerns underlying the federal 'private right of action' doctrine are not implicated in any way by state causes of action, even if those state causes of action incorporate federal law." MTD Opp. 7. Accordingly, the Commonwealth reasons, states may freely allow parties to enforce federal law even where Congress has intentionally limited the rights of parties outside the federal government to enforce that federal law.

The Commonwealth's argument is profoundly flawed. The animating principle behind the private-right-of action doctrine is not, as the Commonwealth would have it, reducing the burden of federal law on state courts.[2] Rather, the reason that parties without federal causes of action cannot enforce federal law in state court is that defining *who* is authorized to enforce federal law is itself a substantive matter of federal law, and is therefore reserved for Congress.

---

[2] The Commonwealth does not cite a single decision that actually attributes the private-right-of-action doctrine to solicitude for state sovereignty. The Commonwealth seems to derive this novel interpretation from a misreading of a passage in *Gonzaga v. Doe*, 536 U.S. 273 (2002), which states that federalism principles affect the circumstances in which state entities are *subject to suit* under 42 U.S.C. 1983. That case has nothing to do with the circumstances in which state *courts* must *adjudicate* cases arising under federal law. MTD Opp. 6.

*See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) ("The determination of who can seek a remedy has significant consequences for the reach of federal power."); *see also* Hart & Wechsler's *The Federal Courts and the Federal System* 709 (6th ed. 2008) (explaining that the justifications for the private right of action doctrine include the recognition (a) that statutory enactments may be conditioned on congressional "compromise that the available remedies would be limited," (b) that private enforcement may lead to "overinclusion or excessive deterrence," and (c) that "recognition of a private remedy may thwart congressional efforts to centralize enforcement in an administrative body").[3] Extending a private right of action to enforce a federal law is a quintessentially legislative judgment reflecting a balancing of numerous concerns, and that balancing cannot be upset by either state courts or federal courts. Thus, under the Supremacy Clause, state law cannot be used to reshape federal law by supplying private rights of action that Congress chose not to extend. And Congress's scheme is no less distorted when state courts rather than federal courts supply a right of action that Congress has chosen to withhold.

For this reason, the limits that Congress has placed on the enforcement of federal law cannot be evaded by simply labeling a proceeding as a state law action that incorporates federal law, especially when—as here—that enforcement action is in reality based entirely on federal law. The U.S. Supreme Court has said plainly that restrictions on private rights of action apply whenever the plaintiff is "in substance" attempting to enforce a provision of federal law that

---

[3]       *Stoneridge*, like some other cases arising in federal court, ties the private-right-of-action doctrine to federal separation-of-powers principles, but in doing so, these cases emphasize that the recognition of a right of action is an act of substantive lawmaking reserved to Congress. State courts may not be similarly constrained in fashioning purely state-law claims, but they do not have authority to rewrite federal law and to create causes of action to enforce federal law that Congress has withheld. *See NASDAQ OMX PHLX, Inc. v. PennMont Securities*, 52 A.3d 296, 314 n.11 (Pa. Super. 2012).

provides no private right of action, regardless of the heading that the plaintiff places on its enforcement action.  *See Astra U.S.A., Inc. v. Santa Clara County*, 131 S. Ct. 1342, 1345 (2011).  In *Astra*, the Supreme Court ruled that a party seeking to enforce a federal statute that did not authorize a private right of action could not evade Congress's decision to centralize enforcement in a federal agency by labeling its lawsuit as a contract action rather than a statutory enforcement action.  To do so, said the Court, would be to ignore that "[t]he statutory and contractual obligations, in short, [were] one and the same."  *Id.* at 1348.  The same disruption of Congress's effort to centralize enforcement authority results when any court—state or federal—extends enforcement authority to anyone other than the regulator selected by Congress.

**B.    Any State Law That Would Authorize Enforcement Of Section 3599 Against The FCDO Here Is Preempted**

The Supreme Court has made clear that state law can conflict with, and therefore be preempted by, federal law when state law purports to supply authority to enforce federal law that Congress chose to withhold.  That is exactly the situation here.  The Commonwealth's contrary argument depends on three fallacies.  First, the Commonwealth starts from the mistaken premise that there is a strong presumption against preemption here that cannot be overcome.  Second, the Commonwealth wrongly asserts that there can be no conflict between federal law and a proceeding to disqualify the FCDO from appearing in state court.  And finally, it wrongly claims that preemption here would improperly curtail the inherent powers of Pennsylvania courts to regulate the practice of law.  None of these arguments salvages the Commonwealth's claims from federal preemption.

*1.    The Commonwealth Applies The Wrong Legal Framework*

The Commonwealth invokes a presumption against preemption (MTD Opp. 14), and argues that the federal courts have blessed state causes of action to enforce federal statutes that

lack private rights of action (MTD Opp. 9). But the cases on which the Commonwealth relies

bear no resemblance to this one, where the Commonwealth's effort to disqualify the FCDO

based on an alleged violation of federal grant conditions would interfere with the relationship

between a federal agency and an entity that it regulates. The Commonwealth's cases involve

conventional, generally applicable state law claims such as negligence or contract enforcement

actions. In those cases, the resolution of common-law claims potentially turned on questions of

federal law, but the claims still remained traditional state-law actions. *See, e.g.*, *Merrell Dow v.

Thompson*, 478 U.S. 804, 807 (1986) (plaintiff alleged traditional common law negligence and

his "causes of action referred to [an alleged violation of federal law] merely as one available

criterion for determining whether [defendant] was negligent"); *Wigod v. Wells Fargo Bank, N.A.*,

673 F.3d 547, 555 (7th Cir. 2012) (plaintiff brought "garden-variety" state law claims including

breach of contract and fraud in the inducement where plaintiff alleged that the specific

misconduct that the defendant had engaged in was promising to abide by a federal statute and

then failing to do so).[4]

Here, by contrast, the Commonwealth is attempting to enforce federal law directly. The

Commonwealth is alleging that the FCDO violated federal law; it has not and could not have

alleged that the FCDO committed a tort or breached a contract with the Commonwealth as

---

[4]     The Commonwealth also cites a law review note as support, but that note undermines the
Commonwealth's argument, emphasizing that while states may have latitude to provide causes
of actions for violations of federal statutes under certain circumstances, states are barred from
doing so under preemption principles where, as here, recognizing a cause of action would
conflict or interfere with the federal scheme. *See* Pauline E. Calande, Note, *State Incorporation
of Federal Law: A Response to the Demise of Implied Federal Rights of Action*, 94 Yale L.J.
1144, 1157-1162 (April 1985). Judge McLaughlin noted as much at oral argument in the
*Mitchell* case. Tr. of 6/27/2013 Hrg. 75-76 ("*Mitchell* Tr."), Case No. 11-2063, Dkt. No. 25
(E.D. Pa.) (THE COURT: …. "And also the Yale Law Journal at the end there, I did read it and I
was wondering why you cited it, because I was thinking it seems so many things they said seem
to support the notion of preemption …. in this case.").

demonstrated by the FCDO's alleged violation of federal law.  Thus, the Commonwealth's

"claims exist solely by virtue" of federal law, and the Commonwealth is not "relying on

traditional state … law which had predated the federal enactments in question…. [but rather] the

existence of these federal enactments is a critical element in their case." *Buckman Co. v.*

*Plaintiffs' Legal Committee*, 531 U.S. 341, 352-53 (2001); *see generally id.* (holding that state

law "fraud on the FDA" claim was preempted because allowing plaintiffs to allege that medical

device approval was procured through fraud would be contrary to a comprehensive legislative

scheme authorizing the FDA to police fraud).  "[N]o presumption against pre-emption obtains"

in circumstances such as this one, because the state is seeking to regulate "the relationship

between a federal agency and the entity it regulates …[;] the relationship originates from, is

governed by, and terminates according to federal law." *Id.* at 347-48; *see Kimmel Inc. v.*

*DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002) (no presumption against preemption applicable

where plaintiff's state law claims for intentional interference with prospective economic

advantage turned on a supposedly fraudulent disclosure to the EPA).[5]  Because of the (at best)

---

[5]      Even when the presumption against preemption applies, that presumption is still
overcome when state law upsets a policy judgment by a federal regulator as to how to balance
competing objectives in the implementation of a federal program.  *See Farina v. Nokia Inc.*, 625
F.3d 97, 117, 123 (3d Cir. 2010) (finding the presumption against preemption to be applicable
but still finding based on *Buckman* that state law was preempted because it would interfere with
federal regulator's determination as to how best to balance competing policy objectives); *see
also Geier v. Honda Motor Co.*, 529 U.S. 861 (2000) (holding state tort law to be preempted
where it would interfere with federal agency's scheme that sought to balance safety and cost
concerns and promote use of a variety of safety mechanisms to allow for further data collection).
The Commonwealth's effort to insert state law into the relationship between the AO and the
FCDO raises exactly such a concern.  In reviewing a grantee's use of federal funds (and deciding
on a possible sanction for a misapplication of those funds), the AO must balance the need to
ensure federal funds are properly utilized with the objectives of securing high-quality
representation for death-sentenced inmates and ensuring that defense counsel are not deterred
from performing tasks for their clients, merely because those tasks might ultimately turn out to
be noncompensable with federal funds.  The Commonwealth's petition, which asks a state court
to independently review whether federal funds have been properly applied—and disqualify

negligible state interest in enforcing federal funding restrictions,[6] all that is needed to support

preemption in these circumstances is a finding that allowing state law regulation would "exert an

extraneous pull on the scheme established by Congress." *Buckman*, 531 U.S. at 353.

The Commonwealth argues that, under the FCDO's reading of *Buckman*, any state

criminal or regulatory law addressed to conduct also regulated by the federal government would

be preempted.  MTD Opp. 17-18.  That is wrong; *Buckman* itself noted that "state-law causes of

actions that parallel federal safety requirements" are permissible when those causes of action are

traditional common-law claims that do not arise "solely from the violation of [federal law]

requirements." *Buckman*, 531 U.S. at 352.  Thus, *Buckman* does not displace all state law that

touches on the same subject as federal law, but only preempts state law that has no independent

or historic basis but merely provides a means for enforcing federal law.

The Commonwealth further argues that in filing its Application in the Pennsylvania

Supreme Court, the Commonwealth was appealing to that court's power to "regulat[e] the ethical

practice of law in state court, which is a traditional and indispensable power of the states."  MTD

Opp. 14 n.7.  But the Commonwealth's argument operates at too high a level of generality; if the

Commonwealth were right, then the "fraud on the FDA claim" held to be preempted in *Buckman*

---

lawyers who, in the state's estimation, have made misjudgments about the account to which
those tasks should be ascribed—could seriously skew that balance in a direction not favored by
AO.

[6]     Courts have noted in other contexts that a state has no real interest in whether an inmate's
counsel is funded under Section 3599.  *See Walter v. Beard*, No. 09-2465, 2010 WL 936466, at
*2 n.1 (M.D. Pa. Mar. 15, 2010) (whether counsel should be appointed under Section 3599 is a
"matter between [capital inmates], the Court and their prospective lawyers" as to which
Commonwealth representatives "are strangers, and indeed, it is inappropriate for them to seek to
stand in the way of that appointment"); *Death Row Prisoners of Pennsylvania v. Ridge*, 948 F.
Supp. 1278, 1279 n.2 (E.D. Pa. 1996) (similar); *see also Harbison v. Bell*, 556 U.S. 180, 192 n.9
(2009) ("Following other States that have litigated the question, Tennessee has expressed 'no
view' on [Section 3599's] scope because it 'has no real stake in whether an inmate receives
federal funding for clemency counsel." (internal citations omitted)).

could simply be recharacterized as a typical product-liability claim and escape preemption. The proper approach is to look at the particulars of the claim to see if state law makes any independent contribution or whether federal law is wholly determinative of whether the alleged state law has been violated. The outcome of this proceeding turns entirely on federal law—as the Commonwealth does not dispute. This case therefore is controlled by *Buckman*.

> 2. *There Is A Clear Conflict Between The Commonwealth's Attempt To Regulate The FCDO's Use Of Grant Funds And The AO's Exclusive Authority To Supervise The FCDO*

Applying the *Buckman* standard for preemption to the facts of this case, it is apparent that the Commonwealth is attempting to "exert an extraneous pull on the scheme established by Congress." *Buckman*, 531 U.S. at 353. The Commonwealth's effort to disqualify the FCDO based on the contention that the FCDO is violating conditions of federal funding under the CJA directly conflicts with the AO's authority to administer grants under the CJA. Congress delegated to the AO responsibility for overseeing community defender organizations and for supervising the expenditure of CJA funds. *See* 18 U.S.C. § 3006A(g) and (i).[7] The AO, in turn, has utilized that authority to enact a comprehensive regulatory scheme that it has determined best fulfills the objective of the CJA. Dkt. No. 14, Ex. 3. Yet the Commonwealth seeks to intrude on the prerogatives of the AO by asserting its own interpretation of federal law and seeking its own remedies for any non-compliance. The Commonwealth's attempt to claim a concurrent regulatory function with respect to the FCDO conflicts with the CJA and is preempted.

The Commonwealth insists that any conflict is illusory because the proceedings it instituted in state court involve only a factual question—namely, whether the FCDO has used

---

[7]    Although individual appointment orders are made by federal judges rather than the AO, the AO oversees the FCDO's use of its sustaining grant, provides program support and oversight through its Office of Defender Services, and ensures compliance with grant terms through annual audits and administrative remedies if and as appropriate.

federal funds to support its representation of Mr. Williams.  MTD Opp. 15, 19.  But the supposedly "factual" question of whether the FCDO has properly used its federal grant necessarily implicates legal and policy questions concerning the terms and conditions of the FCDO's grant—questions that are properly within the province of the AO.[8]  Many questions about the scope of the FCDO's grants are not answered by the plain terms of the statute or even the grants themselves, and the FCDO routinely consults with the AO when the need arises to confirm the proper allocation of grant funds.  Yet the Commonwealth is arguing that a Pennsylvania court (or this Court on removal) should be free to reach its own conclusions as to whether the FCDO has improperly used federal funding, regardless of the potential for conflict with the AO's conclusions on the same issues.  Under the Commonwealth's position, a court could find the FCDO to have violated federal law and disqualify the FCDO from representing a death-sentenced inmate in state court, even when the AO might conclude that the FCDO acted in a manner entirely consistent with the AO's interpretation of the FCDO's federal grants.  Such conflict is particularly likely here because the Commonwealth has taken an aggressive view of what would constitute a misuse of federal funds, asserting (without any support) that the FCDO

---

[8]       For example, in many cases, including that of Isaac Mitchell (in which similar issues are currently pending before Judge McLaughlin), the FCDO serves simultaneously as state court counsel (on a pro bono/privately funded basis) and federal habeas counsel pursuant to an appointment order (for which it receives federal funding under the CJA).  Under such circumstances FCDO attorneys perform tasks, such as researching and investigating potential federal claims, that are relevant or potentially relevant to *both* a state court PCRA proceeding and a federal habeas petition.  Determining whether work that simultaneously serves these dual purposes qualifies for federal funding requires interpretation of the FCDO's contract with the AO—a task to which the AO is uniquely suited.  Likewise, questions may arise as to whether a particular task is reasonably necessary to providing federal habeas representation and thus should be compensable under the CJA; such questions implicate both legal and policy questions about the scope of Section 3599 and the CJA and thus fall within the AO's expertise.  Similarly, the AO is entitled to make judgments about whether the federal interest in state capital defendants receiving effective assistance of counsel in federal habeas proceedings is advanced by having the same community defender organization also represent the defendant in state collateral proceedings, at other than federal expense.

violates the terms of its grants merely by drafting a state-court brief at a desk purchased with federal funds.  Dkt. No. 1, Ex B, at 7.

The Commonwealth does not deny that it is seeking to disqualify the FCDO for misuse of federal funds *even if the AO disagrees* that the FCDO has misapplied federal funds—or even if the AO believes that disqualification would not be an appropriate sanction for any such misapplication.  Specifically, the Commonwealth argues that, even if the Commonwealth succeeds in getting the FCDO disqualified for work outside the terms of its federal grant, the AO may still fund the FCDO for that work if it disagrees with the state court about the scope of the grant.  MTD Opp. 15-16 (emphasizing that the Commonwealth has not "requested an order directing the Administrative Office to adjust the amount of the FCDO's sustaining grant").[9]  The Commonwealth's position would place the FCDO in significant jeopardy: even if the FCDO's activities and resource usage were found by the federal agency to be *proper* under federal law, courts could disregard that conclusion, reach their own determination about the meaning of federal law and federal grants, and disqualify FCDO attorneys for conduct that the federal agency had approved.  This potential for conflicting applications of federal law supports preemption.  *See Kimmel*, 275 F.3d at 1207 (finding preemption of state law claims where otherwise "an applicant's disclosures under [a federal statute], although not challenged by the EPA (the very agency empowered by Congress to enforce [that statute]), may be judged illegal under state law").

---

[9]     The Commonwealth argued in its brief to this Court in the *Johnson* case that the AO would remain free to "pay the FCDO" for any work it deems appropriate, even if this proceeding were to result in a determination that such work is not compensable and that the FCDO should be disqualified on that basis.  CW Opp. to Mot. To Dismiss 16, Case No. 13-2242, Dkt. No. 11. The Commonwealth made a similar point in oral argument before Judge McLaughlin in *Mitchell*. *Mitchell* Tr. 71-72 ("MR. CARR:  ….  I don't think the State Court would be bound by the Administrative Office's finding [that the FCDO has not misused federal funds].").

11

Other factors confirm that the Commonwealth's motion conflicts with the federal scheme. The Commonwealth is asserting a right to a remedy—disqualification—of its own choosing, rather than a remedy selected by the AO.[10]  As the Supreme Court recently held in *Arizona v. United States*, 132 S. Ct. 2492, 2502-2503 (2012), where it invalidated Arizona statutes that purported to do nothing more than provide for additional enforcement of existing federal immigration laws:

> Permitting the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted…. Were § 3 to come into force, the State would have the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies…. [And even when federal officials favor enforcement] there is an inconsistency between [state] and federal law with respect to penalties.

132 S. Ct. at 2502-03.[11]  *Arizona* follows a line of decisions preempting  state laws that impose different remedies than federal law for the same conduct.  *See, e.g.*, *Wisconsin Dep't of Industry, Labor and Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986) (finding "'conflict is imminent' whenever 'two separate remedies are brought to bear on the same activity'" (citing *Garner v. Teamsters*, 346 U.S. 485, 498-99 (1953))); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000) (holding "inconsistency of sanctions here undermines the congressional calibration of force").

---

[10]     To be clear, the FCDO denies that its representation of Mr. Williams is in any way incompatible with the terms of its federal grant.  Nonetheless, even if the FCDO were found to have violated the terms of its federal grant, the appropriate remedy would still be the one selected by the AO, which Congress has entrusted with authority over such grants, and not the Commonwealth or its courts, which are strangers to that relationship.

[11]     The primary holding in *Arizona* was that field—rather than conflict—preemption applied.  However, the Court also cited conflict preemption cases (including *Buckman*) and noted the ways in which Arizona's scheme conflicted with the federal government's ability to administer the immigration laws as the federal government saw fit.  *See, e.g.*, 132 S. Ct. at 2502-03.

In sum, there is a clear conflict between the Commonwealth's efforts to have courts adjudicate (supposedly under state law) whether the FCDO has complied with its federal grant and the federal scheme selected by Congress.  This is more than sufficient to support preemption under *Buckman*.

        3.     *Preemption Does Not Intrude On The Inherent Authority Of Pennsylvania Courts*

The Commonwealth argues that preemption would interfere with the inherent power of state courts to regulate the practice of law.  MTD Opp. 10-13.  But the Commonwealth cannot invoke the "inherent power of courts" as magic words to make the conflict with federal law disappear.

This proceeding is far afield from the traditional exercise of state courts' authority over lawyers who practice before them.  The FCDO's attorneys in question are members of the Pennsylvania bar and thus satisfy the state's criteria for appearing in state court proceedings. Thus, the participation of these attorneys in state court proceedings is not an intrusion on the sovereignty of Pennsylvania.  The question the Commonwealth has raised is not whether those attorneys are qualified under state law to be there, but only whether some breach of federal law disqualifies them despite their state bar credentials.  No authority cited by the Commonwealth suggests that state law authorizes litigants to petition state courts to seek out, adjudicate, and punish alleged violations of federal law by attorneys practicing before them.

Second, this is not the kind of case where state courts are exercising their traditional authority to ensure that the proceedings before them are conducted with fairness and integrity and therefore would not be subject to future collateral attack.  No one (least of all the Commonwealth) questions that the FCDO attorneys are zealous, unconflicted, and effective.  At most, the Commonwealth asserts that the FCDO has made an improper claim for federal funds;

13

but the same could be said of any attorney who claims a deduction on his federal income tax return under an ambiguous provision of the tax code, and it can hardly be argued that the Pennsylvania courts have an interest in auditing the federal tax returns of all of the lawyers appearing before them or that it would be fitting for a state court to interpret and enforce the federal Internal Revenue Code in a manner at least potentially at variance with the judgment of the IRS.  The Commonwealth cites no authority that would support the troubling suggestion that courts have a roving commission to scrutinize the legality of the conduct of the lawyers who appear before them or to inquire into the sources of the funds or other resources that support their representation—or, more troubling still, that a prosecutor can seek to deprive a death-sentenced inmate of his counsel of choice merely by alleging misconduct of a sort that has no bearing on the constitutional adequacy of the attorney's representation or the integrity of the proceedings.[12]

The Commonwealth argues that the issue is not whether the FCDO has violated federal law, but rather whether the FCDO violated a duty of candor by incorrectly representing to the Pennsylvania Supreme Court that "its purely state-court activities have been privately financed." MTD Opp. 12.  But the Commonwealth does not identify any representation that the FCDO made as to how it funds the representation of Mr. Williams or any other client.  Rather, it cites only to legal argument in a brief that the FCDO filed in the *Mitchell* case in which the FCDO argued that federal law does not categorically preclude the FCDO from appearing in state court. MTD Opp. 12 n.6.  This argument was made in the context of responding to a categorical

---

[12]      The implications of permitting the Commonwealth to interfere with a capital defendant's choice of counsel are troubling.  *See* Tr. 5/7/2013 Hrg. 93, *Commonwealth v. Harris*, No. 2:13-mc-00062-CMR (E.D. Pa.), Dkt. No. 33 (statement by Judge Rufe that there is an "inherent danger" in permitting the prosecution to interfere with the selection or appointment of counsel for an indigent criminal defendant); *see also Simonca v. Mukasey*, No. Civ. S-08-1453, 2008 WL 5113757, at *2 (E.D. Cal. Nov. 25, 2008) ("Motions to disqualify counsel are strongly disfavored, as they often pose the very threat to the integrity of the judicial process that they purport to prevent.").

argument (which the Commonwealth has apparently abandoned) that the FCDO is *always* precluded from appearing in state court, even when using private funds, if it has not obtained an appointment order from a federal court.  The Commonwealth has no basis for characterizing this legal argument as a factual misrepresentation about the FCDO's funding for its activities.

Finally, this is not a case where the attorneys whose disqualification is sought are *adjudicated* wrongdoers.  There has been no determination by the AO that the FCDO has misused its federal grant to represent Mr. Williams, let alone a criminal conviction for an offense involving dishonesty or untrustworthiness.  And, even if the AO were to determine that the FCDO had wrongly misallocated resources for use in a PCRA proceeding, this would not necessarily establish anything more than that the FCDO had misinterpreted the terms of its grant, or had submitted records that contained inadvertent expense allocation errors—hardly grounds for a finding of professional misconduct.  *See Office of Disciplinary Counsel v. Anonymous Attorney A*, 552 Pa. 223, 233, 714 A.2d 402, 407 (1998) ("[A] culpable mental state greater than negligence is necessary to establish a *prima facie* violation of Rule 8.4(c).").

The Commonwealth suggests that, under the FCDO's argument, the Commonwealth would be precluded from disqualifying an attorney based on even a federal criminal conviction. MTD Opp. 11-12.  This is wrong, of course; the Pennsylvania Supreme Court, upon the recommendation of its Disciplinary Board, may sanction a lawyer who has been found to have committed acts that constitute "professional misconduct" within the meaning of Rule 8.4 of the Pennsylvania Rules of Professional Conduct.[13]  A violation of a federal regulatory law could

---

[13]      Even if a violation of a rule of professional conduct were established—and none has been—it is far from clear that Pennsylvania law would necessarily entitle the Commonwealth to seek and obtain the FCDO's disqualification on that basis.  Subpart 19 of the Preamble to the Pennsylvania Rules of Professional Conduct states:

conceivably rise to that level, but even then, the state courts would not as a general matter have the authority to appoint themselves as enforcers of federal regulations.  Contrary to the Commonwealth's mistaken assumption, state courts do not have unfettered authority to impose sanctions based on their own conclusions that a party has violated federal law.  *Cf. In re Loney*, 134 U.S. 372, 375-376 (1890) (states cannot impose criminal punishment for perjury in federal court).  A state court might under certain circumstances have authority to impose a sanction on a party already adjudicated to have violated federal law—provided that such a sanction did not conflict with the federal scheme.  *See Haagensen v. Supreme Court of Pennsylvania*, 390 F. App'x 94 (3d Cir. 2010) (state disciplinary proceeding against attorney for misconduct in federal court is permissible where the federal court had already concluded that the attorney had engaged in misconduct); *cf. Buckman*, 531 U.S. at 354 (Stevens, J., concurring) ("This would be a different case if, prior to the instant litigation, the FDA had determined that [the tort suit defendant] had committed fraud….  If the FDA determines both that fraud has occurred and that such fraud requires the removal of a product from the market, state damages remedies would not encroach upon, but rather would supplement and facilitate, the federal enforcement scheme.").

---

"*Violation of a Rule should not itself give rise to a cause of action against a lawyer* nor should it create any presumption in such a case that a legal duty has been breached.  In addition, *violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation*.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, *does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule*.  Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty."

(emphases added).

But this is clearly not such a case.  The Commonwealth is not responding to any determination by the AO that the FCDO has misused federal funds in its representation of Mr. Williams, but rather has taken it upon itself to inquire into whether the FCDO's use of federal funds has been proper.

In sum, the Commonwealth is seeking to arrogate to itself the right to determine whether the FCDO has properly used its grants—determinations that Congress reserved for the AO to facilitate the uniform administration of a national federal program.  But the Commonwealth's cognizable interest in disqualifying its adversary's attorneys is essentially nil, and its intrusion would serve as an obstacle to the AO's administration of the federal program.  For this reason, any state law that would authorize this proceeding is preempted, and this proceeding should be dismissed with prejudice.

## II.    Alternatively, The Court Should Stay This Action So That The AO May Act

As the FCDO explained in its initial brief, the AO has primary jurisdiction to determine whether the FCDO's representation of Mr. Williams in PCRA proceedings violates the terms of its federal grant.  Accordingly, if this case is not dismissed with prejudice, it should be stayed to afford the AO an opportunity to review the controversy in the first instance.

The Commonwealth apparently acknowledges that referral to an expert agency under the primary jurisdiction doctrine is available, but argues that referral of this matter to the AO would be inappropriate because the Court can judge the credibility of the FCDO's statements that it is not improperly using federal funds.  MTD Opp. 20.  But as already explained (*see supra* pp. 9-11), the Commonwealth is wrong to suggest that this proceeding presents merely a straightforward question of fact-finding.  Rather, assessment of whether the FCDO has properly utilized federal funds necessarily implicates policy determinations that should be made, at least in the first instance, by the AO.

17

While the Commonwealth minimizes the AO's expertise (MTD Opp. 22), it is wrong to do so.  Under the CJA, the AO has a significant regulatory and policymaking role.  CJA appropriations to the FCDO are "made under the supervision of the Director of the Administrative Office of the United States Courts," and each CDO must "submit to the Judicial Conference of the United States an annual report setting forth its activities and financial position and the anticipated caseload and expenses for the next fiscal year."  18 U.S.C. § 3006A(g)(2)(B), (i), *see also id.* § 3006A(h) (authorizing Judicial Conference to issue rules and regulations regarding plans for furnishing representation to indigent defendants).  As noted in the FCDO's opening brief (at 6 & Ex. 3), the AO has fulfilled the responsibility delegated to it by issuing comprehensive regulations that govern the conduct of CDOs.  While this Court undoubtedly has experience in determining whether federal law authorizes appointment of counsel in a particular case, it implies no disrespect to the Court to suggest that, given the AO's experience in overseeing, regulating, and auditing community defender organizations, the Court would benefit from receiving the AO's views before making any determination as to whether the FCDO has failed to comply with the terms of its grant.

## CONCLUSION

The Court should dismiss this proceeding with prejudice.  In the alternative, the Court should stay this proceeding and refer the issues to the AO.

Respectfully submitted,

Dated:  July 19, 2013                    /s/ David Richman
                                          David Richman (PA 04179)
                                          PEPPER HAMILTON LLP
                                          3000 Two Logan Square
                                          18th & Arch Streets
                                          Philadelphia, PA 19103
                                          215.981.4000
                                          richmand@pepperlaw.com

                                          Patrick J. Carome (pro hac vice)
                                          Paul R.Q. Wilson (pro hac vice)
                                          Joshua M. Salzman (pro hac vice)
                                          WILMER CUTLER PICKERING
                                          HALE AND DORR LLP
                                          1875 Pennsylvania Avenue, NW
                                          Washington, DC 20006
                                          202.663.6000
                                          Patrick.Carome@wilmerhale.com

                                          *Attorneys for Respondent Defender Association of
                                          Philadelphia*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Reply Brief in Support of Defender Association of Philadelphia's Motion to Dismiss will be served via CM/ECFG notification upon the following:

Peter Carr
Assistant District Attorney
Three South Penn Square
Philadelphia, PA 19107


/s/ David Richman